## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL LUCON FAVREAU,
       Appellant,

      v.

DEPARTMENT OF THE ARMY,
       Agency.

DOCKET NUMBER
SF-0752-11-0273-C-2

DATE: December 15, 2016

# THIS ORDER IS NONPRECEDENTIAL[1]

David P. Clisham, Esquire, San Francisco, California, for the appellant.

Douglas W. Hales and David Michael Tucker, Fort Hunter Liggett, California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### ORDER

¶1     The appellant has filed a petition for review of the initial decision, which granted in part his petition for enforcement. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, referring the petition for enforcement to the Board's Office of General Counsel for additional processing and issuance of a final decision.  *See* 5 C.F.R. § 1201.183(c).

## BACKGROUND

¶2　　　On April 22, 2014, the appellant filed a petition for enforcement of the Board's Final Order in *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-11-0273-I-1, which affirmed the initial decision reversing the appellant's removal for failure to maintain a basic condition of employment. Compliance File (CF), Tab 1; *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-11-0273-I-1, Final Order at 3-12 (Feb. 21, 2014) (hereinafter Final Order).  The Board had ordered the agency to provide the appellant with appropriate relief, including the payment of back pay with interest and other benefits.  *Id.* at 13-14.  The administrative judge initially dismissed the petition for enforcement without prejudice to allow the parties to confer over the issues raised in the petition.  CF, Tab 9.  The petition for enforcement was automatically refiled.  Refiled Compliance File (RCF), Tab 2.

¶3　　　The administrative judge ordered the agency to present proof that it had complied with the Board's final decision or had good reason for noncompliance

or for incomplete or partial compliance. RCF, Tab 10. Following receipt of the parties' responses, RCF, Tabs 11-13, the administrative judge determined that the agency had yet to demonstrate that it was in compliance with the Board's Final Order and issued a May 12, 2015 order reopening the record, RCF, Tab 14. In that order, the administrative judge identified numerous areas where the agency's submission was deficient. *Id.* at 2-7. Following receipt of the parties' subsequent responses, RCF, Tabs 15-16, the administrative judge found that several disputes remained, and on January 13, 2016, he issued another order reopening the record and requiring the agency to file complete responses for all issues identified as problematic in the May 12, 2015 order, RCF, Tab 17. The parties submitted additional filings, and the record closed on March 21, 2016. RCF, Tabs 18-23. The administrative judge granted the petition for enforcement in part, finding that the agency was not in compliance with some of the requirements set forth in the Board's Final Order. RCF, Tab 24, Compliance Initial Decision (CID) at 4-13. The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency responded and, while acknowledging some remaining discrepancies in the appellant's back pay, declined to file a cross-petition. PFR File, Tab 3 at 11.

## ANALYSIS

¶4        The agency bears the burden of proof on the issue of its compliance with a Board order. *Tubesing v. Department of Health & Human Services*, 115 M.S.P.R. 327, ¶ 5 (2010). For the agency to be found in compliance regarding the provision of back pay, interest on back pay, and benefits, the agency must provide a detailed and clear explanation of the calculations that it made in determining the amount due the appellant. The agency must clearly set forth the following: the gross amount due the appellant and how that amount was determined; the amount and reason for all deductions, reductions, and offsets from the gross amount due the appellant; the source and amount of all checks or electronic payments already

received by the appellant and provide evidence that such checks or electronic payments were received; and the amount of interest due the appellant and how that amount was calculated. *Bruton v. Department of Veterans Affairs*, 111 M.S.P.R. 489, ¶ 17, *vacated on other grounds*, 112 M.S.P.R. 313 (2009). The agency also must clearly set forth its calculations relating to the appellant's sick and annual leave balances; Thrift Savings Plan account, including both those of the appellant and of the agency; and any other benefits of employment the appellant would have received but for the agency's unwarranted personnel action. *Id.* Finally, the agency must take the appropriate steps to restore the appellant's health insurance benefits and to provide evidence that it has done so. *Id.* In addition to the calculations, the agency must provide a clear and detailed narrative explanation of its calculations so that the Board may understand the calculations and verify that they are correct. *Id.* The agency also must provide an explanation of all codes and abbreviations used in its documentation. *Id.*

Back Pay, Premium Pay, Differential Pay, and Interest Payments

¶5		The appellant was removed from his position effective January 1, 2011, and the Board ordered him restored as of that date. Final Order at 2, 13. The administrative judge found that the appellant received by electronic funds transfer the proper amount of back pay exclusive of overtime for the following periods: $10,199.52 for January 1 through February 26, 2011, and $63,194.34 for February 27, 2011, through February 25, 2012. CID at 4. The sums he received included night differential, Sunday premium pay, and holiday premium pay. *Id.* The administrative judge found that the appellant's basic pay rate was $24.90 per hour and that he was not eligible for any step increases during the back pay period. *Id.* The administrative judge likewise found that the agency was in compliance for the payment of the appellant's salary post-reinstatement between January 26 and April 30, 2012, when he was again removed. CID at 6.

¶6		The administrative judge denied the appellant's request to receive back pay for the period immediately preceding January 1, 2011, when he was reassigned to

the duties of a security guard and, as a result, did not receive opportunities to earn overtime, shift differentials, and premium pay. CID at 5; RCF, Tab 23 at 3. The administrative judge determined that the Final Order only required that the appellant receive back pay effective January 1, 2011, the date of his removal. CID at 5.

¶7 The administrative judge found that the agency was not in compliance with the Board's order regarding the amount of interest it had paid the appellant. CID at 5-6. The administrative judge found the agency's explanation as to how it calculated interest to be insufficient and additionally noted that the agency's documentation regarding interest payments showed that it actually paid the appellant $1,865.77, rather than the $1,902.47 it stated that it paid him. *Id.*

¶8 On review, the appellant argues that the agency was not in compliance for the payment of his salary during the post-reinstatement period prior to his second removal, February 26 through April 30, 2012. He argues that the compliance initial decision is based solely on a spread sheet prepared from time sheets by the Defense Finance and Accounting Service (DFAS), rather than from payroll records. PFR File, Tab 1 at 4. The appellant asserts that the agency submitted no evidence that he was paid the full amount of his salary and benefits for the 5 pay periods during that time. *Id.* He further asserts that the agency's documentation submitted on February 29, 2016, RCF, Tab 20, shows that he was not paid night differential, overtime, and Sunday and holiday premium pay, PFR File, Tab 1 at 5-7.

¶9 As the agency explains, however, the appellant himself submitted copies of his Leave and Earnings Statements for the post-reinstatement pay periods when he filed his petition for enforcement. PFR File, Tab 3 at 4; CF, Tab 1 at 23-32. Moreover, he admitted in his March 21, 2016 pleading that the "the spread sheet covering year 2012" showed that he was paid for the 5 pay periods, and he included a copy of the DFAS spread sheet in his pleadings. RCF, Tab 23 at 2, 16. DFAS documentation also shows that he received night differential and Sunday

premium pay for these pay periods, although reimbursement did not occur until May 19, 2012.[2]  RCF, Tab 20 at 81-82.

Accrued Annual Leave

¶10    The administrative judge found that the agency calculated the appellant's payment for accrued annual leave properly and paid him for the leave. CID at 6-7.   The administrative judge explained that the agency submitted documentation demonstrating that it paid the appellant $6,922.20, and that it later properly deducted the same amount of money from his back pa y award to prevent an overpayment.  *Id.*; RCF, Tab 20 at 82, 90.  The appellant did not take issue with the calculations whereby the agency reached the gross payment for leave, but he asserts on review that the agency twice deducted his payments for Medicare; Federal and state income taxes; and Old Age, Survivor and Disability Insurance from the lump-sum payout, first when he was initially paid, and later, when the agency deducted the gross amount of his payment for accrued annual leave from his back pay award.  PFR File, Tab 1 at 7.  As the agency points out, however, it was required by regulation to recover from any back pay award "a lump-sum payment for annual leave (i.e., *gross payment before any deductions*)." 5 C.F.R. § 550.805(e)(2)(iv) (emphasis added).  The appellant's argument is thus unavailing.

Offsets for Special Pay

¶11    The administrative judge found that the agency twice took offsets from payments to the appellant, and these offsets were proper.  First, he found that the appellant was paid twice for four pay periods that fell within the back pay

[2] The appellant's attempt to discredit the accuracy of the DFAS spread sheet is unavailing.  The agency explains that when the appellant originally received the spread sheet during a separate, but related appeal, *Favreau v. Department of the Army*, MSPB Docket No. SF-0752-12-0547-I-6, Initial Decision (June 7, 2016), it was accompanied by supporting documents, including an affidavit from the civilian pay branch chief who supervised the audit of his back pay.  PFR File, Tab 3 at 5.  The agency provided the affidavit for the record in the instant appeal.  RCF, Tab 20 at 66-72.

period.[3]  CID at 7-8.  The first payment of $7,568.98, which covered the four pay periods, was made on March 19, 2012, and identified as "Special Pay."  RCF, Tab 20 at 71, 73.  The second payment of $5,782.74 was made on May 17, 2012, and was part of a larger payment identified as "Gross Back Pay."  *Id.* at 71, 80, 82.  On April 5, 2012, the agency offset a back pay award payment by $7,568.98 for "Special Pay."  *Id.* at 77.  The administrative judge found that this offset was a proper one and explained in detail why it had been taken.  CID at 7.  The administrative judge explained that the second offset arose from a special payment that had been made to the appellant on May 7, 2012, when late submission of a time sheet caused him to miss the normal pay cycle.  CID at 8; RCF, Tab 20 at 71, 78-79.  The administrative judge explained that later the automated payroll system reduced his May 17, 2012 pay by $736.86 because he already had received those funds.  CID at 8; RCF, Tab 20 at 71, 82.  Although the appellant reiterates on review his argument that the offsets were improper, PFR File, Tab 1 at 7-9, the record evidence cited above supports the administrative judge's finding that the offsets were valid ones.

Calculation of Overtime Pay

¶12    Board law allows agencies to calculate back pay for overtime based on either an employee's prior overtime assignments, or the overtime assignments for similarly situated individuals.  *Brady v. Department of the Navy*, 55 M.S.P.R. 693, 696 (1992).  The method selected in any particular case must be the one most likely to restore the employee to the status quo ante.  *Id.*  When using the employee's preremoval work history may not accurately reflect the period for which back pay has been awarded, the Board has allowed awards based on averaging of hours worked by similarly situated employees.  *Id.*  For example, in *Bonacchi v. U.S. Postal Service*, 46 M.S.P.R. 531, 535-36 (1990), an employee

_____

[3] These were the pay periods ending January 15, January 25, February 12, and February 26, 2011.  CID at 7; RCF, Tab 20 at 73-74, 80-82.

had been demoted to a position in which he previously had not been employed, and there was no overtime history in that position. *Id.* at 535. The Board thus approved the averaging of the overtime hours worked by similarly situated employees. *Id.* at 536.

¶13 The administrative judge here upheld the agency's decision to calculate the amount of overtime pay based on the average number of overtime hours worked by the appellant's colleagues in the agency's Law Enforcement Branch. CID at 10-11. The administrative judge explained that the appellant did not submit any evidence showing that he would have earned overtime while performing security guard duties—the duties to which he had been assigned immediately prior to his removal—equivalent to the overtime he earned earlier while performing law enforcement duties. CID at 10. Alternatively, the administrative judge found, the appellant failed to demonstrate that he would have been assigned law enforcement duties during all or a part of the back pay period had he not been removed. *Id.* The administrative judge found the agency in compliance with the Final Order for payment of overtime hours for 2011, but not for 2012, because the agency had failed to properly document the payment of overtime for that year. CID at 10-11; *see Bruton*, 111 M.S.P.R. 489, ¶ 17.

¶14 The appellant reiterates his claim that the agency should have based its calculations on the overtime he earned while assigned to law enforcement duties in the past, and not on employee averages, because he engaged in law enforcement duties even while officially assigned to duties as a security guard. He further asserts that the agency's own accounting regulations require that "any overtime the employee would have earned during the period of wrongful suspension or separation should be included in the back pay." PFR File, Tab 1 at 9-10 (citing the Department of Defense Financial Management Regulation (DOD FMR) 7000.14-R, ¶ 060504D). The regulation that the appellant cites, however, also states that "[t]he method of computing overtime incident to a back pay award due an employee may be based on the average number of overtime

hours worked by fellow employees occupying similar positions during the same period." DOD FMR 7000.14-R, ¶ 060504D. Moreover, the Board will not nullify the method that the agency selects for calculating back pay in the absence of a showing that it was unreasonable or unworkable. *Broadnax v. U.S. Postal Service*, 35 M.S.P.R. 219, 226 (1987). The appellant has not made such a showing, and his assumption, that he would have been restored to his previous law enforcement duties during the back pay period, is speculative. We will not disturb the administrative judge's findings.

Promotion to Lieutenant

¶15        An employee is entitled to a promotion in a compliance proceeding only when some provision of law mandates it or when the appellant is able to somehow "clearly establish" that he would, in fact, have been promoted. *Boese v. Department of the Air Force*, 784 F.2d 388, 390 (Fed. Cir. 1986); *Jones v. Department of the Interior*, 70 M.S.P.R. 182, 187-88 (1996). "The established rule is that one is not entitled to the benefit of a position until he has been appointed to it." *United States v. Testan*, 424 U.S. 392, 402 (1976). The administrative judge found that the appellant did not show that he was entitled to a promotion to lieutenant, as he had claimed. CID at 11-12; RCF, Tab 12 at 13−16. The appellant asserted that he would have been promoted had the agency given proper weight to his military experience and/or veterans' preference status. RCF, Tab 12 at 13. He also argued that, during the back pay period, the agency hired an outside individual with qualifications inferior to his own. *Id.* at 14-15.

¶16        The appellant reasserts these arguments on review. PFR File, Tab 1 at 10−11. Any claims he makes apply only to the back pay period, and they are speculative at best. To the extent that the appellant's claims here pertain to the back pay period, he has not shown that he would have been selected had he applied for the position that the agency filled. He also has not identified any

legal authority mandating his placement in a higher-graded position during that period of time. His argument therefore is unavailing.

Conclusion

¶17        Accordingly, we affirm the administrative judge's findings in the compliance initial decision.[4]  Outstanding issues of compliance remain with respect to the agency's calculation of interest and the agency's calculation of overtime in 2012.  *See* CID at 5-6, 10-11.  The agency submitted evidence and argument on these issues on June 29 and October 28, 2016, under MSPB Docket No. SF-0752-11-0273-X-1, which is currently pending in the Board's Office of General Counsel. The appellant's petition for enforcement will therefore be referred to the Board's Office of General Counsel, and, depending on the nature of the submissions, an attorney with the Office of General Counsel may contact the parties to further discuss the compliance process.  The parties are required to cooperate with that individual in good faith.  Because the purpose of the proceeding is to obtain compliance, when appropriate, an Office of General Counsel attorney or paralegal may engage in ex parte communications to, among other things, better understand the evidence of compliance and/or any objections to that evidence.  Thereafter, the Board will issue a final decision fully addressing the appellant's petition for review of the compliance initial decision and setting forth his further appeal rights and the right to attorney fees, if applicable.

**ORDER**

¶18        The appellant may respond to the agency's June 29 and October 28, 2016 submissions within 20 days of the date of this Order.  5 C.F.R. § 1201.183(a)(8). If the appellant does not respond to the agency's evidence of compliance, the

---

[4] The compliance initial decision includes findings that the appellant did not challenge on review concerning restoration of forfeited annual leave and a time-off award, CID at 8-9, payment of the appellant's uniform allowance, CID at 12-13, and the rescission of the removal and reinstatement, CID at 13.

Board may assume that he is satisfied with the agency's actions and dismiss the petition for enforcement.

¶19      The appellant's response should be filed in the compliance referral matter currently pending in the Board's Office of General Counsel**, MSPB Docket No. SF-0752-11-0273-X-1.**  All subsequent filings should refer to MSPB Docket No. SF-0752-11-0273-X-1 and should be faxed to (202) 653-7130 or mailed to the following address:

Clerk of the Board
U.S. Merit Systems Protection Board
1615 M Street, N.W.
Washington, D.C. 20419

Submissions may also be made by electronic filing at the MSPB's e-Appeal site (https://e-appeal.mspb.gov) in accordance with the Board's regulation at 5 C.F.R. § 1201.14.

¶20      The agency is reminded that if it fails to provide adequate evidence of compliance, the responsible agency official and the agency's representative may be required to appear before the Office of the General Counsel of the Merit Systems Protection Board to show cause why the Board should not impose sanctions for the agency's noncompliance in this case.  5 C.F.R. § 1201.183(a).  The Board's authority to impose sanctions includes the authority to order that the responsible agency official "shall not be entitled to receive payment for service as an employee during any period that the order has not been complied with."  5 U.S.C. § 1204(e)(2)(A).

¶21      This order does not constitute a final order and is therefore not subject to judicial review under 5 U.S.C. § 7703(a)(1).  Upon the Board's final resolution of

the remaining issues in this petition for enforcement, a final order shall be issued which shall be subject to judicial review.


FOR THE BOARD:               _____
                                       Jennifer Everling
                                       Acting Clerk of the Board

Washington, D.C.